# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**TODD BOUTIN,**

        **Petitioner,**

    **-v-**                                                       **Case No. 05-C-921**

**DAN BENIK, Warden,**
**Stanley Columbia Correctional Institution,**

        **Respondent.**

## DECISION AND ORDER

On August 17, 2005, pro se petitioner, Todd Boutin ("Boutin"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 6, 2002, before the before the circuit court for Fond du Lac County, Wisconsin, Boutin entered an *Alford* plea[1] to one count of third degree sexual assault with a habitual criminal sentence enhancement. The state circuit court entered a conviction upon that plea and sentenced Boutin to seven years of incarceration to be followed by five years of extended supervision. Boutin is currently incarcerated at Stanley Correctional Institution in Chippewa County, Wisconsin. Respondent Dan Benik ("Benik") is the warden of that institution and, therefore, has custody of Boutin.

Boutin filed his petition in the United States District Court for the Northern District of Illinois. The day after Boutin filed his petition, the court entered an order transferring the matter to this district based on the finding that Boutin's filing in that district was

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970)

"simply mistaken." *United States ex. rel Boutin v. Wirtz*, No. 05-C-4726 (N.D. Ill. Aug. 18, 2005).

The matter was then randomly assigned to United States Magistrate Judge William E. Callahan. By an Order on Rule 4 Review issued on August 30, 2005, Judge Callahan directed Benik to file an answer. Benik filed an answer. The parties did not consent to magistrate judge jurisdiction. Therefore, the matter was subsequently randomly reassigned to this Court. The matter is ready for resolution and will now be addressed.

Boutin's petition lists four grounds for relief. However, grounds one, three, and four are variants of Boutin's contention that his *Alford* plea was invalid. Liberally construed, grounds one and four are that the District Attorney did not show strong proof of guilt based on evidence. Ground three is that the trial court did not find a sufficient factual basis for strong evidence that Boutin was guilty of the crime to which he entered a plea. Ground two states "letter from 2/28/03. Third party information. Wife & daughter to testify in Court of Appeals and were never called upon."[2] (Am. Pet. 5.) Boutin states that ground two was not raised before the highest state court having jurisdiction because the letter was not written until February 23, 2003. (*Id*. at 6.)

Boutin filed a letter dated September 16, 2005, and attached is an unsigned letter dated February 23, 2003, with a May 22, 2003, "received" stamp. The final paragraph of the

---

[2]The Order on Rule 4 Review does not mention ground two.

2

February 23, 2003, letter states: "Jerry's daughter is changing her story again. Now she says that you might not be the one." (*See* Docket No. 13.)[3]

Despite the cryptic nature of ground two, Boutin's subsequent letter at least provides an indication of the nature of the claim. Nonetheless, ground two does not raise a colorable constitutional claim and is, therefore, dismissed.

## Factual Background[4]

On July 16, 2002, the Fond du Lac County District Attorney's Office filed a criminal complaint charging Boutin with sexual assault of a child under 13 years of age as a repeater. (Answer Ex. J. 1.) According to the complaint, at approximately 12:50 a.m., when the child was in her mother's bedroom, trying to sleep and watching a cartoon on television, Boutin, a friend of the family, came into the bedroom leaned over and kissed her. (*Id*.) Boutin put his tongue in her mouth and continued kissing the child about two minutes. (*Id*.) Boutin then reached down with his hands, spread her legs apart, unbuttoned her shorts, and put his hand inside her underwear. (*Id*.) Boutin put one finger in the child's vagina and moved it around inside of her for about five minutes, and, while his finger was inside of her, asked her "How does that feel baby?" (*Id*.) Saulsbury entered the room and Boutin quickly placed the covers on top of the child. (*Id*.) After Saulsbury exited the room, Boutin resumed touching the child's private area putting his finger inside her vagina for another five to ten minutes. (*Id*.) The child told Boutin she did not like what he was doing and that she wanted him to stop. (*Id*.)

---

[3]The criminal complaint which relates the circumstances of the sexual assault indicates that the victim's mother, was at that time the fiancée of Jerry Saulsbury ("Saulsbury"), whom she referred to as her father.

[4]These facts are based on the record of the state court proceedings attached to the state's answer.

3

Eventually, Boutin stopped and left the bedroom. (*Id*.) When Saulsbury returned to the room, the child told him what had happened. (*Id*.) The child was examined at St. Agnes Hospital shortly thereafter and mild abrasions on each side of the hymen were observed by the examining physician. (*Id*.) The physician stated that the abrasions were consistent with the child's description of Boutin's using his finger to touch her vaginal area. (*Id*.)

A preliminary hearing was conducted on July 26, 2002. (Answer Ex. K.) The mother of the nine-year old victim and Saulsbury testified. (*See id*. at 5, 13.) The court bound over Boutin based on the testimony of the victim's mother that Boutin put his finger in her nine-year old daughter's private area. (*Id*. at 17.)

On November 6, 2006, Boutin entered an *Alford* plea. (Answer Ex B. Entry Nos. 23-30.) In addressing the sexual assault charge, the court stated that the allegation was that on July 13, 2002, Boutin had sexual intercourse with the victim in the case, and that the victim did not consent to that sexual intercourse. (Answer Ex. L 9.) The court asked Boutin, "Can I accept the information that's in the complaint in this case to form the basis that, in fact, your conduct met those two elements on that date." (*Id*. at 10). Boutin responded, "Yes." (*Id*.)

On November 26, 2002, Boutin filed a notice of intention to pursue post-conviction relief. (Answer Ex. B at Entry No. 37.) Boutin filed his post-conviction motion to withdraw his *Alford* plea with the circuit court on October 29, 2003. (*Id*. at Entry No. 54). The motion was heard on December 3, 2003, (*Id*. at Entry No. 60), orally denied at the hearing, and then denied in a written order issued on December 10, 2003 (*Id*. at Entry No. 61.)

4

The court's oral ruling addressed whether there was a sufficient factual basis shown on the record for the acceptance of Boutin's *Alford* plea. (Answer Ex. M 13.) The court stated:

> The record indicates that there are a number of places where [Boutin], specifically at Page 12 [of the Transcript of the November 6, 2002, Plea and Sentencing Hearing] acknowledged that the State had sufficient evidence to proceed to prove the two elements and he's simply unable to defend himself against the allegations . . . Page 9. That is, I pointed out to [Boutin] what the State would have to show: He had sexual intercourse with the victim, named her, and, secondly that she didn't consent to that. I asked him if he understood the elements. So, he acknowledged that the State had sufficient evidence, said he could not defend himself against that, he knew what the elements were prior to that.

(Answer Ex. M 13-14.) The court also relied upon page 10 of that plea and sentencing hearing transcript where Boutin agreed that the court could accept the information in the criminal complaint to form a basis to show that his conduct met the two elements which the court had just "expressed" to him; sexual intercourse and lack of consent. (*Id*. at 13.) The court noted that Boutin had not said "No," or "I don't know what's in the criminal complaint," or that he had not read the complaint, and that Boutin had not even vacillated, rather, stated the court:

> It was an absolute yes, you can accept that information. It was clear to me that Boutin knew what the elements were, knew what the - - - what the State would have to prove, acknowledged that they had evidence against him, that the criminal complaint and the section in the criminal complaint that contains that information is the basis for that.

(*Id*. at 15.) The court found that "[t]hat information is strong evidence," – that there was

sexual intercourse; that she told him to stop; that he went on for some time – which established sufficient evidence to form the basis for the *Alford* plea. (*Id*.) The court denied the motion and directed defense counsel to prepare an order. (*Id*.) The written order is not part of the answer. Boutin filed a notice of appeal on December 22, 2003. (Answer Ex. B Entry No. 64.)

On appeal, the sole issue raised by Boutin was that he should have been allowed to withdraw his *Alford* plea. (Answer Ex. F (*State of Wisconsin v. Boutin*, 03-3371-CR, 1-2 (Wis. Ct. App. Sept. 1, 2004)).) The appellate court found that the circuit court properly looked to the criminal complaint as a basis for finding strong evidence of guilt. (*Id*. at 2.) The court of appeals stated that the complaint details the victim's version of the offense and that Boutin's actions set out therein clearly meet the definition of sexual intercourse set forth in § 940.225(5)(c) of the Wisconsin Statutes. (*Id*.) The court held that it was "unconvinced" that the circuit court erroneously exercised its discretion in determining that the criminal complaint provided a strong proof of guilt. (*Id*. at 3.)

Boutin sought review of the court of appeals' decision. (Answer Ex. G.) The Wisconsin Supreme Court denied the petition for review on January 11, 2005. (Answer Ex. I.)

### *Procedural Default*

Benik maintains that Boutin's challenges to his Alford plea do not include a challenge to the voluntariness of that plea. Furthermore, Benik maintains, that to the extent Boutin is raising a voluntariness claim, such claim is procedurally defaulted.

A petitioner is generally required to exhaust all of his available state court remedies before seeking a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A);

6

*Picard v. Connor*, 404 U.S. 270, 275 (1971). This requirement referred to as the exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights. *Picard*, 404 U.S. at 275; *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir 2004). The petitioner is therefore required to first "present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 275-76. If the petitioner fails to do so and the opportunity to raise that claim in state court has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition. *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004); *Perruquet*, 390 F.3d at 514. A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default, *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977), or he can establish that the denial of relief will result in a miscarriage of justice, *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts. *Id.* at 488, 492. Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In order to show, alternatively, that a miscarriage of justice would result if habeas relief is foreclosed, the petitioner must show that he is actually innocent of the offense for which he was convicted; i.e.,

7

that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995).

Despite a liberal construction, Boutin's petition cannot be reasonably construed as asserting that his plea was involuntary. The petition claims that there was no showing of strong evidence of guilt by the district attorney or finding of strong evidence by the court in accepting Boutin's plea.

Furthermore, to the extent that Boutin's petition could be construed to raise such a claim, Boutin has procedurally defaulted the claim because he failed to present it to the Wisconsin courts.[5] Boutin has exhausted his state remedies, *see O'Sullivan v. Boerkel*, 526 U.S. 838, 844 (1999), and, under Wisconsin law, it appears there is no means for asserting such a claim at this juncture. *See Page v. Frank*, 343 F.3d 901, 906 (7th Cir. 2003).

Moreover, Boutin does not assert that cause exists for his procedural default or actual prejudice from that failure. The submissions before the Court do not provide any indication of cause for the procedural default. Without cause for the default, the Court need not make further inquiry. *Momient-El v. DeTella*, 118 F.3d 535, 545 n.7 (7th Cir. 2003).

*Strong Evidence of Guilt Claim*

Boutin's claims one, two and four are permutations of the single claim based on *Alford*. Grounds one and four assert that the district attorney did not present strong evidence of guilt; ground two asserts that trial court did not find sufficient evidence to establish strong evidence of guilt of the sexual assault offense.

---

[5]To the extent that ground two of Boutin's petition could be deemed to raise a constitutional claim, the same procedural default analysis would apply.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if a state court adjudicated a constitutional claim on the merits, then a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376-77 (2000) (discussing the AEDPA). The relevant decision for purposes of the Court's review is the decision of the last state court to rule on the merits of the petitioner's claim – which in Boutin's case, is the Wisconsin Court of Appeals. *See Badelle v. Correll*, 452 F.3d 648, 654 (7th Cir 2006). Boutin bears the burden of proving that the Wisconsin Court of Appeals' application of federal law was unreasonable. *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004). The "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Daniels v. Knight*, 476 F.3d 426, 433 (7th Cir. 2007).

Boutin's claims rest on *North Carolina v. Alford*, 400 U.S. 25 (1970). *Alford* addressed whether a trial court committed constitutional error when it accepted Alford's guilty plea and adjudged him guilty when Alford asserted his innocence and maintained that he was entering his plea in order to avoid the death penalty. In concluding that such a plea was constitutionally sound so long as it was entered freely and knowingly and had an adequate factual basis, the Supreme Court explained that a plea entered by a defendant who continues to assert his innocence was not materially different from that entered by a defendant who pleads nolo contendre or "no contest" insofar as an express admission of guilt is "not a constitutional

requisite to the imposition of criminal penalty." *Alford*, 400 U.S. at 37. "An individual accused of a crime may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id*.

Stated somewhat differently, the Supreme Court held that there is no constitutionally significant difference between a plea accompanied by a proclamation of innocence (now referred to as an *Alford* plea) and a plea in which the defendant simply declines to admit guilt (a no contest plea). *Id*. A plea entered knowingly and voluntarily under either scenario is a valid waiver of the right to a trial and it authorizes the court to treat the defendant as if he were guilty for the purposes of the case. *Id*. Nonetheless, a trial court may refuse to accept a plea from a defendant who proclaims his innocence. *Id*. at n.11.

*Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993), rejected a contention much like that asserted by Boutin. The court of appeals held "[s]trong evidence of guilt" may be necessary to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 of the Federal Rules of Criminal Procedure, "but it is not necessary to comply with the Constitution." *Id*. *See also*, *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir.1995); *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990).

In Wisconsin, trial courts have discretion to accept *Alford* pleas, but only if the court determines that there is "strong proof of guilt" to negate the defendant's claim of innocence. *State v. Smith*, 549 N.W.2d 232, 234 (Wis. 1996). However, this state law requirement is not founded in the Constitution. *See Alford*, 400 U.S at 38 n.11 & 39.

In Boutin's case, the state appellate court found strong evidence of guilt in the criminal complaint. Boutin disagrees with the Wisconsin court of appeals' determination that the trial court could rely on the facts stated in the complaint in finding that there was strong evidence of guilt. However, the state court's decision is supported by the factual record of the state court proceedings. Moreover, since the requirement of "strong evidence of guilt" is not a Constitutional requirement, Boutin has not established that the Wisconsin court of appeals' decision was contrary to, or involved an unreasonable application of, Supreme Court precedent. Therefore, Boutin's request for habeas corpus relief is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Boutin's petition for habeas corpus relief is **DENIED**.

Boutin's action is **DISMISSED WITH PREJUDICE**.

The Clerk of Court **SHALL** enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 1st day of November, 2007.

**SO ORDERED,**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**